David A. Stall, Esq., SBN 126399
LAW OFFICES OF DAVID A. STALL
2151 Michelson Drive, Suite 105
Irvine, CA 92612
Telephone (949) 553-3944
Facsimile (949) 553-3943
DAS@stall-law.com

Attorney for Defendant
AZTECA INTERNATIONAL CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANDER MUSIC, INC., a California Corporation | Case No.: CV08 – 08184  JHN (RCx) |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS  CERTAIN CLAIMS IN PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR COPYRIGHT INFRINGEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| AZTECA INTERNATIONAL CORPORATION, a Delaware Corporation | |
| Defendant. | **[F.R.C.P. 12(b)(6)]** |
| | Trial Date: February 15, 2011 Time:  9:00 a.m. Courtroom:  23 |
| | Pretrial Conf:   January 31, 2011 Time:  10:30 a.m. |
| | Honorable Jacqueline H. Nguyen |
| | Hearing Date: Sept. 27, 2010 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 27, 2010, at 2:00 p.m. in courtroom 790, of this Court, located at 255 East Temple Street, Los Angeles, California 90012, or as soon thereafter as the matter may be heard, before the Hon.

1

Jacqueline H. Nguyen, Defendant Azteca International Corporation will and hereby does move for an order dismissing the synchronization rights infringement claims, in plaintiff's First Amended Complaint For Damages And Injunctive Relief For Copyright Infringement for failing to state a claim upon which relief can be granted.

One of the claims in issue charges Defendant with causing and authorizing the distribution throughout the United States and within the jurisdiction of this Court, of pre-recorded television programs involving Plaintiff's compositions synchronized with video images without the prior knowledge or authorization of Vander Music, Inc.

The second claim in issue charges Defendant Azteca with causing and authorizing the recording and replay of television programs embodying Plaintiff's compositions by so called "video on demand" and "start over services" without Vander's prior knowledge or consent.  This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 12, 2010.

This motion is based on this Notice of Motion, and the attached Memorandum of Points and Authorities, The First Amended Complaint and such other pleadings and papers on file herein, and  any oral argument as may be presented at the hearing on this motion.


Dated: August __18__, 2010



_____

David A. Stall, Attorney for
Defendant

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    EVEN THOUGH COMINGLED, THE CLAIMS IN ISSUE ARE SEPARATE AND DISTINCT

Plaintiff chose to combine three distinct claims in a single paragraph of its First Amended Complaint for unknown reasons.  Each claim commences with the phrase "Within three (3) years....." [First Amended Complaint "FAC" para 6]

The claim in the second position charges Defendant with causing and authorizing the distribution throughout the United States and within the jurisdiction of this Court, of pre-recorded television programs involving Plaintiff's compositions synchronized with video images without the prior knowledge or authorization of Vander.

The claim in the third position charges Azteca International with causing and authorizing the recording and replay of television programs embodying Plaintiff's compositions by so called "video on demand" and "start over services" without Vander's prior knowledge or consent.

These two claims are combined in Complaint Paragraph 6 with a third charge listed first, that Defendant Azteca caused and authorized the broadcast and public performance of television programs embodying Plaintiff's compositions in the United States and within the jurisdiction of this court via satellite television and cable television without public performance license from Vander or Vander's agents, ASCAP and BMI.

Only the second (authorizing distribution) and third (recording and replay) claims are the subject of this motion to dismiss.  The public performance claim is not in issue.

This public performance infringement claims is a category of copyright rights qualitatively distinct from synchronization rights.  *Angel Music Inc., v. ABS Sports, Inc.* 631 F. Supp 429, 433 n4 (S.D.N.Y. 1986)    Public performance and

3

synchronization rights are distinct twigs in the bundle of music publishers rights. *Agee* supra, citing *Buffalo Broadcasting v. A.S.C.A.P.* 744 F. 2d 917, 920 (2nd Cir 1984).

While the complaint fails to present a short and concise statement of each separate claim, required by Rule 8 of the Federal Rules of Civil Procedure, the identifiable claims contained in paragraph 6 of Plaintiff's complaint are indeed separate and distinct. For purposes of Rule 12(b)(6), "claim" means a set of facts which, if established, gives rise to one or more enforceable legal rights. *Goldstein v. North Jersey Trust Co.* 39 FRD 363, 366 (SD NY 1966) Thus, even though improperly pled, the separate and distinct synchronization and performance rights charges are open to independent legal analysis and consideration.

All of the television programming in issue is identified in the amended complaint as productions made in Mexico by an affiliate of defendant Azteca International. [FAC para. 2,6] The Mexican production is allegedly being made in violation of Plaintiff's claimed rights to musical compositions by using the compositions in synchrony with video images in pre-recorded programming. The U.S. distribution of said programming, along with the recording and replay, are claimed to be violations of Plaintiff's United States Copyright rights because of the alleged illegal synchronization activity in Mexico. [FAC para 6]

## II.  MATERIAL COMPLAINT ALLEGATIONS TAKEN AS TRUE

The material facts of the First Amended Complaint, taken as true solely for purposes of this motion are as follows,

Plaintiff Vander Music, Inc, a California corporation claims to own or control copyrights in musical compositions that it exploits and administers – a music publisher. [FAC para 3,4]

Defendant Azteca International is identified as a broadcaster and distributor to its affiliates, of television programming produced by Azteca's affiliate in Mexico – a television network. [FAC para 2,6]

1  The television programs are alleged to be produced and recorded in Mexico

2  utilizing plaintiff's musical compositions synchronized with visual images without the

3  prior knowledge or authorization of Vander.  [FAC para 6]

4  The television programs are alleged to be recordable and replayable in the US

5  without Vander's prior knowledge or consent.  [FAC para 6]

6  **III.   LEGAL ISSUE IN DISPUTE**

7  The legal issue presented by the above averments is whether Azteca

8  International is in violation of United States copyright laws by broadcasting and/or

9  distributing to its affiliates, and/or permitting the recording of television

10  programming,  produced in Mexico in a manner allegedly violating Plaintiff's United

11  States Copyright rights?

12  The short answer is that Plaintiff US Music Publisher cannot claim copyright

13  infringement based upon conduct that is not cognizable under US copyright law

14  because the alleged infringing conduct occurs entirely outside of the United States.

15  *Subafilms v. MGM-PATHE Communications Co.*, 24 F. 3d 1088 (9th Cir. 5/13/1994)

16  **IV.   AS SET FORTH IN THE FIRST AMENDED COMPLAINT,  THE**

17  **ACT OF SYNCHRONIZATION IS A FOREIGN EVENT**

18  The alleged illegal synchronization is absolutely essential to the illegal

19  distribution and improper program recording claims against Azteca International.

20  Azteca International's only alleged U.S. involvement with the synchronization event

21  is causing and authorizing the distribution of the Mexican produced televisions

22  programs and/or allowing program recordings. These activities by themselves could

23  not constitute copyright infringement and the complaint makes no such claim.

24  Thus, Defendant's US copyright infringement conduct depends on Plaintiff's

25  right to claim a copyright infringement violation arising out of an alleged infringing

26  act that occurs outside of the United States.  Plaintiff clearly does not have such a

27  right under United States law because U.S. copyright law does not serve to educate

28

1  foreign infringement.   Therefore, the claim of copyright infringement, based upon

2  alleged illegal foreign synchronization fails to state a cause of action.

3      The synchronization is complete when the program is created and recorded so

4  the infringing activity charged in the complaint is complete in Mexico. To be clear,

5  under *United States* Copyright Law, "Synchronization" is the process of combining

6  sound recordings of musical compositions with visual images. A "synchronization

7  license" is a license for use of a composition in a film, pre-recorded radio or television

8  program, or radio or television commercial. See 2 <u>Lindey On Entertainment,</u>

9  <u>Publishing and the Arts</u> § 7.01 (2d ed. 2000). *Bridgeport Music, Inc. v. Still N The*

10  *Water Publishing,* 327 F.3d 472, 2003 Fed.App. 0130 (6th Cir. 05/05/2003)    A

11  synchronization license is required if a copyrighted musical composition is to be used

12  in "timed relation" or synchronization with an audiovisual work.    <u>4 Melville B.</u>

13  <u>Nimmer & David Nimmer, Nimmer on Copyright</u> Sections(s) 24.02[f] (1995). Most

14  commonly, synch license are necessary when copyrighted music is included in movies

15  and commercials. <u>Nimmer Section(s)</u> 24.04[C], *supra.*

16      The synchronization license is a form of permission that authorizes another to

17  synchronize music with an audiovisual work, such as a motion picture or television

18  program.    More precisely it is permission to make a recording of a musical

19  composition  coupled with the condition that the recording only be used as part of the

20  specific audiovisual work and used (i.e., reproduced or performed) in a particular way.

21  In other words, it is actually a reproduction license, but  the word, "synchronization"

22  continues to be commonly used, perhaps because technically, synchronizing involves

23  making a piece of music in integral part of the audiovisual work, and it has always

24  been the intent of licensors of synchronization rights that such licensed be so limited.

25  <u>Al Kohn and Bob Kohn, The Art of Music Licensing</u> p. 375, (1992).

26      Audiovisual work is defined in the copyright act as " ....works that consist of a

27  series of related images which are intrinsically intended to be shown by the use of

28  machines, or devices such as projectors, viewers, or electronic equipment, together

with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied." 17 U.S.C. § 101.

## V.   FOREIGN COPYRIGHT INFRINGEMENT IS NOT DETERMINED BY UNITED STATES LAW

In *Subafilms v. MGM-PATHE, supra*, the  United States licensed distributor of the Beatles, "Yellow Submarine" film authorized the foreign distribution of the film on videocassette.  The licensor, Subafilms, claimed that the foreign videocassette distribution was in violation of its license agreement and sought damages for the foreign distribution authorized in the U.S.  The actual act of infringement was the distribution occurring in the foreign countries.  The Subafilms court held that "the mere authorization of acts of infringement that are not cognizable under the United States copyright laws because they occur entirely outside of the United States does not state a claim for infringement under the Copyright Act." *Subafilms @* 1099

## VI.   FOREIGN INFRINGEMENT IS MEASURED BY THE LAWS OF THE COUNTRY IN WHICH THE ACT OCCURS

The Subafilms Court noted that "The applicable law [to ascertain infringement] is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national or in which the work was first published. *Subafilms @* 1097  An affiliate of Azteca International would itself be a broadcaster.  A Mexican affiliate broadcaster would be creating programming in accord with its legal rights in Mexico and subject to Mexican law, not United States Copyright law.  If the production is made in violation of law, it could only be in violation of Mexican law, not United States law.

## VII.  THE ILLEGALITY OF THE FOREIGN ACTS OR THE HARMFUL EFFECT IN THE UNITED STATES DOES NOT ESTABLISH U.S. INFRINGEMENT

The Subafilms Court also noted that    "Even  assuming  arguendo  that  the  acts authorized  in  this  case  would  have  been  illegal  abroad,  we  do  not  believe  the

1   distinction offered by Appellees is a   relevant one. Because the copyright laws do not

2   apply extraterritorially, each of the  rights  conferred  under  the  five  section  106

3   categories must be read as extending "no farther than the [United States'] borders."

4   *Subafilms* @ 1094  Thus an alleged act of infringement in Mexico cannot support a

5   US copyright infringement claim unless there is an infringing act that occurs in the

6   US.  Vander  does  not  claim  that  Azteca   International  is  itself  engaging  in

7   synchronization activities in the U.S. nor is it even accused of causing or authorizing

8   the synchronization.

9   **VIII.   THE ALLEGED UNITED STATES DISTRIBUTION IS NOT A**

10  **VIOLATION OF ANY VANDER  RIGHT**

11      Vander's exact complaint is that Azteca International is causing and authorizing

12  distribution.  Distribution is of course one of the rights of a copyright holder per 17

13  U.S.C. § 106(3), " to distribute copies or phonorecords of the copyrighted work to the

14  public by sale or other transfer of ownership, or by rental, lease, or lending;"  The

15  complaint itself only charges distribution to Azteca International affiliates, not to the

16  public as specified in Sec. 106(3).  Thus the charge is not supported by any factual

17  averment bringing the distribution activity within the infringement definition.

18      The  only  possible  subject  of  distribution  in  the  complaint  is  the  recorded

19  television program itself.  The program as produced could not be the object of

20  plaintiff's infringement claim as the copyright would be vested in the producer.  The

21  publisher would have no right to claim distribution rights in the program.

22      The  music  publisher  would  only  have  a  copyright  interest  in  the  program

23  distribution if it violated one of its exclusive rights under US Copyright law.  In this

24  case, the program does not violate plaintiff's US Copyrights since the alleged

25  offending act of synchronization abroad itself does not violate US copyright law.

26  Thus the programming transmitted to the affiliates for broadcast does not include any

27  aspects violating Vander's US copyright law rights and thus cannot constitute an

28  infringement  violation  through  distribution.  Without  direct  U.S.  copyright

1 infringement, there can be no contributory infringement. *Aro Manufacturing Co. V.*
2 *Convertible Top Replacement Co.*, 81 S. Ct. 599, 365 U.S. 336 (U.S. 02/27/1961) [if
3 there is no direct infringement of a patent there can be no contributory infringement.]

### IX. THE ALLEGED UNITED STATES PROGRAM RECORDING IS NOT A VIOLATION OF ANY VANDER RIGHT

6 For the same reason expressed in the preceding section, the alleged copyright
7 violations by causing and authorizing the recording and replay of the television
8 programs in issue does not state a cause of action.  Absent an infringing element in the
9 programs that violates Vander's U.S. copyright rights, the use and distribution and
10 recording permission is vested in the program copyright holder, not Vander.  As the
11 programs contain no infringing elements cognizable under US copyright law, Vander
12 does not have any infringement claim arising out of the legal use of the programs in
13 the United States.

### X. THE SYNCHRONIZATION IN MEXICO DOES NOT BAR THE LEGAL PROGRAM PERFORMANCE IN THE UNITED STATES

16 Azteca International is identified as a broadcaster, but not charged with any
17 infringement associated therewith.   A broadcaster's only copyright activity in
18 transmitting programming to the public is the performance of a given musical
19 composition.  If the broadcaster has the right to transmit such a performance  per a
20 direct or blanket license through a performing rights society such as ASCAP or BMI,
21 the broadcast cannot constitute copyright infringement and the complaint presents no
22 such claim in this regard.  Even an infringing recording and synchronization produced
23 in the United States, does not bar the use of the program for broadcasting if the
24 broadcaster has the right or license to do so.  This exact situation was presented in
25 *Agee v. Paramount Communications, Inc.* 59 F 3d 317, (2nd Cir. 6/26/1995) where the
26 program producer synchronized a sound recording with video and transmitted the
27 recording to the broadcaster via satellite.  The plaintiff claimed that the synchronized
28 recording was tainted because of the lack of permission from the copyright holder.

The court recognized that the act of synchronization was separate from the act of performing and that a synchronization violation does not bar a right to perform. Thus, even if an independent U.S. producer supplied Azteca International with an illegally synchronized program, the network would still have the right to broadcast or cause the program to be broadcast so long as its only activity was a licensed performance.

## XI.    UNDER UNITED STATES LAW, PLAINTIFF'S INFRINGEMENT CLAIM WOULD BELONG IN MEXICAN COURTS

In a scenario, where the act of direct infringement does occur in the United States, a party is entitled to recover damages flowing from exploitation abroad of the domestic acts of infringement. *Los Angeles New Service v. Reuters Television International*, 47 USPQ 1349, 149 F 3d 987 (9th Cir. 7/13/1998) In that case, the infringer made a copy of the offending work in the US and sent it abroad. The US infringing act permitted recovery of damages for the foreign distribution. The point is that the place of infringement determines the status of the infringement and the applicable remedies.

## XII.    CONCLUSION

Plaintiff's infringement complaint is for a violation of its rights under Mexican Law, not United States Law and the complaint as presented, fails to state a claim against defendant Azteca International albeit for broadcasting or distributing, or permitting program recording based upon the unauthorized act of synchronization in Mexico.

Dated: August ⟋, 2010                    Respectfully submitted,


                                        _____

                                        David A. Stall, Attorney for
                                        Defendant