1  David A. Stall, Esq., SBN 126399
   LAW OFFICES OF DAVID A. STALL
2  2151 Michelson Drive, Suite 105
   Irvine, CA 92612
3  Telephone (949) 553-3944
   Facsimile (949) 553-3943
4  DAS@stall-law.com

5  Attorney for Defendant
   AZTECA INTERNATIONAL CORPORATION
6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10
   VANDER MUSIC, INC., a California   )   Case No.:  CV08 – 08184  JHN (RCx)
11 Corporation                        )
                                      )   DEFENDANT'S NOTICE OF
12          Plaintiff,                )   MOTION AND MOTION TO
                                      )   DISMISS  PLAINTIFF'S SECOND
13          v.                        )   AMENDED COMPLAINT FOR
                                      )   DAMAGES AND INJUNCTIVE
14 AZTECA INTERNATIONAL              )   RELIEF FOR COPYRIGHT
   CORPORATION, a Delaware            )   INFRINGEMENT,  VICARIOUS AND
15 Corporation                        )   CONTRIBUTORY COPYRIGHT
              Defendant.              )   INFRINGEMENT; MEMORANDUM
16                                    )   OF POINTS AND AUTHORITIES
                                      )
17                                    )   [F.R.C.P. 12(b)(6)]
                                      )
18                                    )   Trial Date: February 15, 2011
                                      )   Time:  9:00 a.m.
19                                    )   Courtroom:  23
                                      )
20                                    )   Pretrial Conf:   January 31, 2011
                                      )   Time:  10:30 a.m.
21                                    )
                                      )   Honorable Jacqueline H. Nguyen
22                                    )   Hearing Date: December 13, 2010

23
   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
24

25
          PLEASE TAKE NOTICE that on December 13, 2010, at 2:00 p.m. in
26
   courtroom 790, of this Court, located at 255 East Temple Street, Los Angeles,
27
   California 90012, or as soon thereafter as the matter may be heard, before the Hon.
28

                                      1

Jacqueline H. Nguyen, Defendant Azteca International Corporation will and hereby does move for an order dismissing the plaintiff's Second Amended Complaint For Damages And Injunctive Relief For Copyright Infringement, Vicarious and Contributory Copyright Infringement for failing to state any claim upon which relief can be granted.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 27, 2010.

This motion is based on this Notice of Motion, and the attached Memorandum of Points and Authorities, The Second Amended Complaint and such other pleadings and papers on file herein, and  any oral argument as may be presented at the hearing on this motion.


Dated:  November ____, 2010



                                            _____

                                            David A. Stall, Attorney for
                                            Defendant

# TABLE OF CONTENTS

I.    MATERIAL COMPLAINT ALLEGATIONS
TAKEN AS TRUE.................................................................... p. 3

II.   VANDER'S INFRINGEMENT CONTENTIONS................................ p. 3

III.  LEGAL ISSUES IN DISPUTE................................................... p.6

IV.  THE FOREIGN SYNCHRONIZATION IN ISSUE
IS NOT SUBJECT TO UNITED STATES ATTACK
BY VANDER MUSIC............................................................. p.6

     A.    An Act That Might Otherwise Constitute Infringement
          Under United States Copyright Law Is Not Actionable
          If No Part Of The Infringing Conduct Occurs In The
          United States.............................................................. p.7

     B.    VANDER Music Does Not Hold Any Copyright Rights
          That Would Cover The Use Of Its Musical
          Compositions In Mexico............................................... p.9

V.   AN INFRINGING SYNCHRONIZATION HAS NO LEGAL
IMPACT ON THE RIGHT TO PERFORM THE WORK.......... ......... p.9

VI.  THE COMPLAINT FAILS TO IDENTIFY ANY DIRECT
PERFORMANCE RIGHT INFRINGEMENT..................................... p.10

VII. THE COMPLAINT PRESENTS A MULTITUDE OF CLAIMS
OUTSIDE OF THE STATUTE OF LIMITATIONS............................ p.12

VIII. CONCLUSION..................................................................... p.13

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

47 U.S.C. § 310(b)(3)................................................................. p.5

17 U.S.C. § 101......................................................................... p.8

17U.S.C. § 507(b)..................................................................... p.12

## FEDERAL CASES

Subafilms v. MGM-PATHE Communications Co., ...........................p.7, 8, 9, 11
24 F. 3d 1088 (9th Cir. 5/13/1994)

Bridgeport Music, Inc. v. Still N The Water Publishing,................................ p.7
 327 F.3d 472, 2003 Fed.App. 0130 (6th Cir. 05/05/2003)

Angel Music Inc., v. ABS Sports, Inc........................................... p.10
 631 F. Supp 429, 433 n4 (S.D.N.Y. 1986)

Buffalo Broadcasting v. A.S.C.A.P. ............................................. p.10
 744 F. 2d 917, 920 (2nd Cir 1984).

Agee v. Paramount Communications, Inc........................................ p.10
 59 F 3d 317, (2nd Cir. 6/26/1995)

Aro Manufacturing Co. V. Convertible Top Replacement Co.,....................... p.11
 81 S. Ct. 599, 365 U.S. 336 (U.S. 02/27/1961)

Roley v. New World Pictures, Ltd., ............................................. p.12
19 F.3d 479, 481 (9th Cir. 1994).

## OTHER AUTHORITIES

2 Lindey On Entertainment, Publishing and the Arts...................................... p.7
§ 7.01 (2d ed. 2000)

4 Melville B. Nimmer & David Nimmer, ......................................................  p.7
Nimmer on Copyright Sections(s) 24.02[f] (1995)

Al Kohn and Bob Kohn, ...............................................................................  p.8
The Art of Music Licensing p. 375, (1992)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  MATERIAL COMPLAINT ALLEGATIONS TAKEN AS TRUE[1]

VANDER Music, Inc's Second Amended Complaint basically identifies two factual events, one foreign and one domestic, contended to be infringing activities, without any legally valid links to a United States copyright violation.

The foreign event is the production of television programs in Mexico by AZTECA International Corporation's parent  TV Azteca S.A. de C.V., , which allegedly synchronized compositions  under VANDER'S Unites States control with visual images and recorded and reproduced the  compositions within these television programs." [Second Amended Complaint, [SAC] Para. 8]  This single fact is presented as the sole support for VANDER'S First, Second and Third Claims.

The  domestic event is the broadcast of the TV Azteca produced programs in the United States by Los Angeles station KAZA, that included synchronized and reproduced within it Compositions under VANDER'S United States control.  [SAC para 10-88]  This single fact is presented as the sole support for VANDER'S Fourth, Fifth, Sixth and Seventh Claims.

## II.  VANDER'S INFRINGEMENT CONTENTIONS

Based upon the foregoing two stated facts, VANDER claims:

**First Claim:**              Unauthorized Reproduction 17 U.S.C. 106(1)

Paragraph 92.          AZTECA and/or TV Azteca performed the synchronizing act

Paragraph 93.          VANDER    would    have    the    right    to    license    the synchronization.

---

1   For purposes of the motion to dismiss only.

| | | |
|---|---|---|
| 1 | Paragraph 94. | AZTECA "caused and authorized" its licensees to to record |
| 2 | | and replay the programs by "video on demand" and "start |
| 3 | | over" services. |
| 4 | **Second Claim:** | Unauthorized Reproduction 17 U.S.C. 106(1) |
| 5 | Paragraph 101. | Defendant's parent infringed VANDER'S copyrights by its |
| 6 | | Mexican synchronization. |
| 7 | Paragraph 102. | VANDER believes that the Mexican production was under |
| 8 | | Defendant's control. |
| 9 | **Third Claim:** | Unauthorized Reproduction 17 U.S.C. 106(1) |
| 10 | Paragraph 109. | Defendant's parent infringed VANDER'S copyrights by its |
| 11 | | Mexican synchronization. |
| 12 | Paragraph 110. | Defendant knew of the Mexican production. |
| 13 | Paragraph 111. | VANDER believes that Defendant caused or materially |
| 14 | | contributed to the Mexican production. |
| 15 | **Fourth Claim:** | Unauthorized Performance 17 U.S.C. 106(4) |
| 16 | Paragraph 117. | AZTECA "caused and authorized" its cable and satellite |
| 17 | | operators to broadcast the listed programs without |
| 18 | | VANDER'S permission. |
| 19 | **Fifth Claim:** | Unauthorized Performance 17 U.S.C. 106(4) |
| 20 | Paragraph 123. | AZTECA caused the broadcast and public performance of |
| 21 | | the programs by TV, cable and satellite without VANDER'S |
| 22 | | consent. |
| 23 | Paragraph 125. | AZTECA owes "necessary" license fees to VANDER. |
| 24 | Paragraph 126. | AZTECA infringed VANDER'S copyrights. |
| 25 | Paragraph 127. | AZTECA performed the compositions without |
| 26 | authorization. | |
| 27 | **Sixth Claim:** | Unauthorized Performance 17 U.S.C. 106(4) |
| 28 | | |

4

| | | |
|---|---|---|
| 1 | Paragraph 130. | AZTECA "authorized and caused" cable and satellite |
| 2 | | broadcasts of the programs. |
| 3 | Paragraph 131. | AZTECA had reason to know that the broadcasts were made |
| 4 | | without VANDER'S consent. |

**Seventh Claim:**          Unauthorized Performance 17 U.S.C. 106(4)

| | | |
|---|---|---|
| 6 | Paragraph 138. | Non party TV Azteca caused the U.S. performances of its |
| 7 | | programming by transmitting same to the U.S. broadcasters. |
| 8 | Paragraph 139. | VANDER believes that AZTECA had the right to control |
| 9 | | TV Azteca transmissions to the U.S. |

What is *not* factually averred –

— A direct infringement event by any television broadcaster, *including* KAZA.

— A direct infringement event by any cable or satellite provider.

— A direct infringement "video on demand" or "start over" event.

VANDER does contend in various claims that AZTECA is infringing its copyrights by "causing and authorizing" the performances that would encompass KAZA but its attempt to link AZTECA to KAZA as the broadcaster by alleging its belief that KAZA is wholly owned by AZTECA [SAC para 9] fails for two reasons:

a) The KAZA licensee of record is Pappas Telecasting.  [Request for Judicial Notice filed concurrently herewith]

b) AZTECA, as an entity under foreign ownership, cannot legally own a U.S. station. 47 U.S.C. § 310(b)(3).

Thus, KAZA is simply a local broadcaster (and the only identified broadcaster) alleged to perform the programming produced by TV Azteca in Mexico.

AZTECA'S alleged involvement with the two stated facts is that:

DEFENDANT'S NOTICE OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

A.    It is legally responsible for the Mexican synchronization event because VANDER *believes* that AZTECA caused, authorized, knew about or could control its parent's conduct.[2]

B.    It is obligated to obtain a performance rights license from VANDER for the KAZA broadcasts because VANDER *believes* that AZTECA caused or authorized the  broadcast by having the program transmitted to KAZA.


III.    LEGAL ISSUES IN DISPUTE

The core issues to be considered in assessing the sufficiency of the second amended complaint are as follows:

1. Whether AZTECA can be held responsible under U.S. copyright law for a synchronization event that occurs wholly in Mexico?

2. Whether VANDER would even have a legal right to challenge a Mexican synchronization event?

3. Whether AZTECA is violating any of VANDER'S rights by "causing or authorizing" U.S. broadcasters to perform the programming in the U.S. when the broadcaster is not identified as a direct infringer?


 VANDER'S Second Amended Complaint address  reproduction vs. performance infringements in separate claims that are likewise addressed herein in separate discussions that follow.


IV.    THE FOREIGN SYNCHRONIZATION IN ISSUE IS NOT
       SUBJECT TO UNITED STATES ATTACK BY VANDER MUSIC

---

2   Contrary to the typical claim that the parent controls the subsidiary, Vander claims, with no factual support, that the subsidiary controls the parent.  Defendant is unable to locate any authority that would support such a claim.

DEFENDANT'S NOTICE OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

**A.   An Act That Might Otherwise Constitute Infringement Under United States Copyright Law Is Not Actionable If No Part Of The Infringing Conduct Occurs In The United States.**

VANDER cannot claim copyright Infringement based upon conduct that is not cognizable under US copyright law because the alleged infringing conduct occurs entirely outside of the United States. *Subafilms v. MGM-PATHE Communications Co.*, 24 F. 3d 1088 (9th Cir. 5/13/1994)  Therefore, the claim of copyright infringement, based upon alleged illegal foreign synchronization fails to state a cause of action.

After identifying TV Azteca as the producer of the programming in Mexico at SAC Para 8, VANDER then asserts at SAC Para 92 that "AZTECA and /or TV Azteca" performed the synchronization in issue.  Synchronization is complete when the program is created and recorded so the infringing activity charged in the complaint is either complete in Mexico as alleged in SAC Para 8, or the complaint is fatally indefinite as to the place of infringement.

To be clear, under *United States* Copyright Law, "Synchronization" is the process of combining sound recordings of musical compositions with visual images. A "synchronization license" is a license for use of a composition in a film, pre-recorded radio or television program, or radio or television commercial. See 2 Lindey On Entertainment, Publishing and the Arts § 7.01 (2d ed. 2000). *Bridgeport Music, Inc. v. Still N The Water Publishing,* 327 F.3d 472, 2003 Fed.App. 0130 (6th Cir. 05/05/2003)   A synchronization license is required if a copyrighted musical composition is to be used in "timed relation" or synchronization with an audiovisual work.  4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright Sections(s) 24.02[f] (1995).  Most commonly, synch license are necessary when copyrighted music is included in movies and commercials. Nimmer Section(s) 24.04[C], *supra*.

The synchronization license is a form of permission that authorizes another to synchronize music with an audiovisual work, such as a motion picture or television

7

program.  More precisely it is permission to make a recording of a musical composition  coupled with the condition that the recording only be used as part of the specific audiovisual work and used (i.e., reproduced or performed) in a particular way. In other words, it is actually a reproduction license, but  the word, "synchronization" continues to be commonly used, perhaps because technically, synchronizing involves making a piece of music in integral part of the audiovisual work, and it has always been the intent of licensors of synchronization rights that such licensed be so limited. Al Kohn and Bob Kohn, The Art of Music Licensing p. 375, (1992).

Audiovisual work is defined in the copyright act as " ....works that consist of a series of related images which are intrinsically intended to be shown by the use of machines, or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied." 17 U.S.C. § 101.

In *Subafilms v. MGM-PATHE, supra*, the  United States licensed distributor of the Beatles, "Yellow Submarine" film authorized the foreign distribution of the film on videocassette.  The licensor, Subafilms, claimed that the foreign videocassette distribution was in violation of its license agreement and sought damages for the foreign distribution authorized in the U.S.  The actual act of infringement was the distribution occurring in the foreign countries.  The Subafilms court held that "the mere authorization of acts of infringement that are not cognizable under the United States copyright laws because they occur entirely outside of the United States does not state a claim for infringement under the Copyright Act." *Subafilms* @ 1099

According to the *Subafilms* Court  "The applicable law [to ascertain infringement] is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national or in which the work was first published. *Subafilms* @ 1097  An affiliate of Azteca International would itself be a broadcaster.  A Mexican affiliate broadcaster would be creating programming in accord with its legal rights in Mexico and subject to Mexican law, not United States

Copyright law.  If the production is made in violation of law, it could only be in violation of Mexican law, not United States law.

Furthermore,  "Even assuming arguendo that the acts authorized in this case would have been illegal abroad, we do not believe the distinction offered by Appellees is a relevant one. Because the copyright laws do not apply extraterritorially, each of the rights conferred under the five section 106 categories must be read as extending "no farther than the [United States'] borders." *Subafilms* @ 1094  Thus an alleged act of infringement in Mexico cannot support a US copyright infringement claim unless part of the infringing act that occurs in the US.

Here the alleged synchronization is complete in Mexico.  The broadcast of the synchronized program in the U. S. is a separate and distinct copyright event that is not impacted in any manner by the synchronized content.

**B.     VANDER Music Does Not Hold Any Copyright Rights That Would Cover The Use Of Its Musical Compositions In Mexico.**

VANDER identifies itself as an "affiliate" of Editora Musical Musart, S.A. de C.V with the exclusive right to  control, administer and license musical composition owned by Edimusa in the United States. [SAC para 6]  Thus VANDER  claims to be the sub- publisher for Edimusa in the territory of the United States.  By that description, VANDER'S right to deal with copyright events is confined to the United States.  There is no asserted or apparent authority to issue a synchronization license to a foreign producer.

As VANDER has no apparent right to attack or even license a synchronization act in Mexico, any vicarious infringement claim in the U.S. must fail for lack of any actionable direct infringement.

**V.     AN INFRINGING SYNCHRONIZATION HAS NO LEGAL IMPACT ON THE RIGHT TO PERFORM THE WORK.**

DEFENDANT'S NOTICE OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   Public performance infringement claims is a category of copyright rights
2   qualitatively distinct from synchronization rights. *Angel Music Inc., v. ABS Sports,*
3   *Inc.* 631 F. Supp 429, 433 n4 (S.D.N.Y. 1986)  Public performance and
4   synchronization rights are distinct twigs in the bundle of music publishers rights.
5   *Agee infra*, citing *Buffalo Broadcasting v. A.S.C.A.P.* 744 F. 2d 917, 920 (2nd Cir
6   1984).
7   If the broadcaster has the right to transmit such a performance  per a direct or
8   blanket license through a performing rights society such as ASCAP or BMI, the
9   broadcast cannot constitute copyright infringement and there is no infringement to
10  cause or contribute to.  An infringing recording and synchronization, even if produced
11  in the United States, does not bar the use of the program for broadcasting if the
12  broadcaster has the right or license to do so.  This exact situation was presented in
13  *Agee v. Paramount Communications, Inc.* 59 F 3d 317, (2nd Cir. 6/26/1995) where the
14  program producer synchronized a sound recording with video and transmitted the
15  recording to the broadcaster via satellite.  The plaintiff claimed that the synchronized
16  recording was tainted because of the lack of permission from the copyright holder.
17  The court recognized that the act of synchronization was separate from the act of
18  performing and that a synchronization violation does bar a right to perform.  Thus,
19  even if an independent U.S. producer supplied Azteca International with an illegally
20  synchronized program, the network would still have the right to cause the program to
21  be broadcast so long as the only U.S. activity was a licensed performance.

22
23   **VI.      THE COMPLAINT FAILS TO IDENTIFY ANY DIRECT**
24   **PERFORMANCE RIGHT INFRINGEMENT.**
25   KAZA is identified as the specific performer of the VANDER controlled
26  compositions but *nowhere* in the complaint is KAZA identified as performing the
27  works without a performance rights license.   In fact, no broadcaster is identified as a
28

direct infringer.  Since the broadcaster is ultimately the entity that performs the work thought the broadcast, they are the only entity that could be a direct infringer.

AZTECA is only charged with causing and authorizing the broadcasts by the respective station licensees or transmittors.   VANDER'S apparent claim in this regard is to be paid for the license "necessary" to cause and authorize the broadcast –in addition to the license fees due for the performance.

Just as with the synchronization issue, if there is no identified or U.S. enforceable act of actionable direct infringement, there can be no legally actionable vicarious infringement.  Without direct U.S. copyright infringement, there can be no contributory infringement.  *Aro Manufacturing Co. V. Convertible Top Replacement Co.*, 81 S. Ct. 599, 365 U.S. 336 (U.S. 02/27/1961) [if there is no direct infringement of a patent there can be no contributory infringement.]

The *Subafilms* Court addressed this point stating at page 1092, as follows:

"'In a word, if there is no [direct] infringement of a patent there can be no contributory infringer.' " (quoting Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 677, 64 S.Ct. 268, 276, 88 L.Ed. 376 (1944) (Frankfurter, J., dissenting on other grounds) (alteration added by Deepsouth Court))).FN7 See generally 1 Paul Goldstein, Copyright: Principles, Law and Practice § 6.1, at 705 (1989) [hereinafter Goldstein] ("It is definitional that, for a defendant to be held contributorily ... liable, a  direct infringement must have occurred."); 3 David Nimmer & Melville B. Nimmer, Nimmer on Copyright § 12.04[A][2][b], at 12-81 (1993) [hereinafter Nimmer] ("There can, by definition, be no contributory liability if that conduct which is aided by the putative contributory infringer is not itself infringing.")."

VANDER'S failure to identify any direct infringer not only constrains AZTECA'S ability to respond, it also precludes AZTECA from taking any steps to address or cure the direct infringement.  AZTECA could possibly resolve its claimed

1    contributory infringement status by simply suspending program transmission until an
2    appropriate performance license was in place.

3            In a similar vein, AZTECA is charged with allowing "video on demand" and/or
4    "start over" activity by its affiliates without any example whatsoever of a single
5    occurrence that could be considered an infringement of VANDER'S copyrights.  If
6    AZTECA is not apprised of the specific conduct of a third party that is deemed
7    infringing, it cannot address same, much less adequately respond to such a nebulous
8    charge.

9

10   **VII.   THE COMPLAINT PRESENTS A MULTITUDE OF CLAIMS**
11   **OUTSIDE OF THE STATUTE OF LIMITATIONS.**

12           If the complaint does present any legally cognizable claim in the court's view, a
13   significant portion of the claimed infringing events predate the applicable statute of
14   limitations.  These include  SAC Paragraphs 11, 14, 20, 21, 24, 25, 26, 27, 32, 33, 34,
15   35, 36, 37, 43, 44, 47, 57, 64 and 66.  Paragraphs 87 and 88 present claims that are
16   uncertain as to date.

17           A civil action under the Copyright Act must be "commenced within three years
18   after the claim accrued." 17U.S.C. § 507(b). A cause of action accrues when a plaintiff
19   knows of the infringement or is chargeable with such knowledge. *Roley v. New World*
20   *Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994). Because each act of infringement is a
21   distinct harm, the statute of limitations bars infringement claims that accrued more
22   than three years before suit was filed but does not preclude infringement claims that
23   accrued within the statutory period.

24           The above referenced infringing events occurred before the applicable
25   limitations period by an alleged public display of the infringement.  They are clearly
26   time barred.  As the complaint includes numerous time barred events, the two
27   referenced undated events at Para 87 and 88 are not sufficiently pled to assess the
28   limitations that may apply.

## VIII. CONCLUSION

Plaintiff's synchronization infringement complaint is for a violation, if any, of a copyright holder's rights under Mexican Law, not United States Law and the complaint as presented, fails to state a claim against defendant Azteca International. The charge of causing or authorizing U.S. television broadcasts without VANDER'S permission fails for lack of any identified act of direct infringement that would support VANDER'S vicarious infringement claim.  The complaint in its entirety does not present a legally sufficient copyright infringement claim.

Dated:  November __1__, 2010

Respectfully submitted,

David A. Stall, Attorney for
Defendant

13