UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANDER MUSIC,<br><br>           Plaintiff,<br><br>vs.<br><br>AZTECA INTERNATIONAL CORPORATION,<br><br>           Defendant. | Case No. 2:08-cv-08184-JHN-RCx<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Judge:  Honorable Jacqueline H. Nguyen |

The matter before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"), filed on November 1, 2010. ("Motion; docket no. 73.) A hearing on this matter was originally scheduled for December 13, 2010. However, the Court deemed the Motion appropriate for decision without oral argument and took it under submission. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons herein, the Court GRANTS in part and DENIES in part the Motion.

## I.
## BACKGROUND

Plaintiff is a music publisher and Defendant is the United States affiliate of a Mexican television broadcaster. More specifically, the SAC alleges that Plaintiff Vander Music Inc., ("Vander or "Plaintiff") is a California corporation

1  "engaged in the business of owning, exploiting and administering musical
2  compositions." (SAC ¶ 4.) The SAC also alleges that Defendant Azteca
3  International Corporation ("Defendant" or "Azteca") is a Delaware Corporation
4  "engaged in the business of broadcasting and distributing television programming
5  . . . produced in Mexico, by TV Azteca S.A. de C.V." (SAC ¶ 3.) Plaintiff filed a
6  complaint for copyright infringement on December 11, 2008. (Docket no. 1.) On
7  August 2, 2010, Plaintiff filed a First Amended Complaint. (Docket no. 61.) On
8  September 15, 2010, the Court granted Defendant's Motion to Dismiss Plaintiff's
9  First Amended Complaint. (Docket no. 67.) On October 13, 2010, Plaintiff filed
10 a Second Amended Complaint. (Docket no. 72.)

The SAC alleges the following facts:

Plaintiff claims it had the sole right to control, administer, and license musical compositions ("the Compositions") owned by Editora Musical Musart, S.A. de C.V. ("Edimusa"), which were registered by Plaintiff or Edimusa with the United States Copyright Office. (SAC ¶¶ 5–7.) Plaintiff alleges that, without Plaintiff's authorization, Defendant's parent company, T.V. Azteca, synchronized the Compositions with visual images and recorded and reproduced the Compositions during television programming production. (Id. ¶¶ 8, 92–93.) Plaintiff claims that KAZA, a television station which broadcasts in the Los Angeles area and is "wholly owned by [Defendant],"[1] broadcast many television programs which embodied Plaintiff's Compositions. (Id. ¶¶ 9–88.) Plaintiff also alleges that Defendant transmitted, distributed and broadcast the television programs which embodied Plaintiff's Compositions via satellite to KAZA. (Id. ¶ 89.) Finally, Plaintiff alleges that Defendant transmitted, distributed and broadcast the television programs which embodied the Compositions to "more

---

[1] Defendant argues that KAZA is not wholly owned by Defendant, and requested judicial notice of an FCC record that names Pappas Telecasting as the licensee of record for KAZA. (RJN at 1.)

1  than 40 local television stations, cable television networks and satellite television
2  networks . . . for the purpose of having those programs broadcast, performed
3  and/or distributed within the United States." (Id. ¶ 90.)
4      On November 1, 2010, Defendant filed the instant Motion to Dismiss.
5  (Docket no. 73.) On November 22, 2010, Plaintiff filed an Opposition. (Docket
6  no. 75.) Defendant filed a Reply. (Docket no. 76.)

## II.
## JUDICIAL NOTICE

Along with its Motion, Defendant filed a Request for Judicial Notice ("RJN") pursuant to Federal Rule of Evidence 201. Filed on November 1, 2010 (docket no. 74), Defendant seeks judicial notice of the following document:

1. <u>Exhibit A</u>: FCC search report of October 21, 2010, showing Pappas Telecasting to be the licensee of record for television broadcast station KAZA-TV.

Plaintiff has not opposed Defendant's Request for Judicial Notice, and does not dispute the accuracy of the document. The Court finds that the document constitutes matters appropriate for judicial notice, as it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, because Defendant has requested judicial notice and supplied the Court with the necessary information, the Court must take judicial notice under Federal Rule of Evidence 201(d). Accordingly, the Court GRANTS Defendant's Request for Judicial Notice.

## III.
## LEGAL STANDARD

Rule 12(b)(6) permits a party to seek dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss, courts generally cannot consider material outside the complaint, such as facts presented in briefs, affidavits, or discovery materials, unless such material is alleged in the complaint or judicially noticed. *McCalip v.*

*De Legarret*, No. CV-08-2250, 2008 U.S. Dist. LEXIS 87870, at *4 (C.D. Cal. Aug. 18, 2008); *see Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). Courts must accept as true all material factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1229 (9th Cir. 2004). However, this tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Courts need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Based on judicial experience and common sense, courts must determine whether a complaint plausibly states a claim for relief. *Id.* at 1950.

Part of the Court's determination as to whether a claim plausibly states a claim for relief involves an analysis of a pleading's factual specificity. Asserting more than mere conclusory statements, a complaint must provide a factual basis showing that a plaintiff is entitled to relief and giving the defendant fair notice of claims and relief asserted. *Id.* at 1950–51; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); Fed. R. Civ. P. 8(a)(2). Although a lengthy factual background is unnecessary, dismissal of a complaint is warranted where the plaintiff fails to allege specific facts needed to support the plausibility of a claim or provide fair notice to the opposing party. *See id.*

## IV.

## DISCUSSION

Defendant seeks dismissal on three grounds: (1) Plaintiff's claims are not cognizable under United States copyright law because the alleged infringements occurred outside of the United States; (2) Plaintiff failed to identify performance right infringement; and (3) numerous allegations of copyright infringement are barred by the statute of limitations. For the reasons herein, the Court GRANTS the Motion as to Plaintiff's first, second, third, fourth, sixth, and seventh claims

4

and DENIES the Motion as to the fifth claim.

**A. Unauthorized Reproduction Claims**

Plaintiff's first three causes of action are based on alleged violations of 17 U.S.C. § 106(1), the unauthorized reproduction of a copyrighted work. Plaintiff lists causes of action for (1) direct infringement of copyrighted work, (2) vicarious copyright infringement, and (3) contributory infringement. (SAC ¶¶ 91–95, 101–103, 109–111.) The SAC fails to plausibly state a claim for relief on the first three causes of action.

1. <u>Extraterritorial Application of Copyright Law</u>

In the SAC, Plaintiff asserts that TV Azteca, Defendant's parent company, infringed Plaintiff's copyright when it synchronized Plaintiff's Compositions with visual images during the production of television programming in Mexico without Plaintiff's authorization. (SAC ¶ 8.) In the Motion, Defendant contends that Plaintiff "cannot claim copyright [i]nfringement based upon conduct that is not cognizable under US copyright law because the alleged infringing conduct occurs entirely outside of the United States." (Motion at 7:4–6.) Defendant asserts that the act of synchronization is complete when the program is created and recorded, and therefore, the infringement took place entirely in Mexico. (Id. at 7:12–15.) "It is settled that the Copyright Act does not apply extraterritorially." *Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 990 (9th Cir. 1998). "For the Act to apply, "'at least one alleged infringement must be completed entirely within the United States.'" *Id*. at 990–91 (quoting *Allarcom Pay Television Ltd. v. General Instrument Corp*., 69 F.3d 381, 387 (9th Cir. 1995)).

In its Opposition, Plaintiff asserts that "[e]ven if Azteca could completely insulate itself from liability for synchronization . . . because the synchronization took place in Mexico, United States Courts have been loathe to allow these sorts

5

of loopholes to provide shelter for clearly infringing actions." (Opp'n at 10:15–20.) Despite this contention, Plaintiff fails to provide any supporting case law that suggests infringing acts which occur entirely abroad can be subject to United States copyright laws. For example, Plaintiff cites to *L.A. News Serv. v. Conus Communs. Co. Ltd. Pshp.*, in which the Court addressed whether a Canadian Broadcasting Corporation could be held liable under copyright laws of the United States for "broadcasts of allegedly infringing programs originating in Canada which are received and viewed in the United States." 969 F. Supp. 579, 581 (C.D. Cal. 1997). The Court found that the direct acts of infringement were not "wholly extraterritorial" because "the display of Plaintiffs' copyrighted works on American television sets" was at the crux of the claim. *Id.* at 583. Here, unlike in *Conus*, the direct acts of alleged infringements are wholly extraterritorial because the reproductions of Plaintiff's copyrighted work took place entirely in Mexico where the Compositions were reproduced and recorded without authorization. *See L.A. News Serv. v. Reuters Tv Int'l*, 149 F. 3d 987, 991 (9th Cir. 1998) ("Each act of copying constitute[s] a completed act of infringement.") Therefore, Plaintiff fails to state a cognizable claim for copyright infringement based on allegations of extraterritorial conduct in Mexico.[2]

2. "Video on Demand" and "Start Over" Services

Under the claim for direct infringement of reproduction rights, Plaintiff also alleges Defendant "caused and authorized it[s] licensees to allow the reproduction, recording, and replay of television programs embodying the Compositions by . . . 'video on demand' and 'start over' services" without

---

[2] Plaintiff argues that "the Court [in the Order granting leave to file the FAC] disregarded the argument . . . that because the infringing acts allegedly took place entirely outside the United States, application of the Copyright Act is somehow improper[.]" (Opp'n 3:3-6.) However, the Court did not reach this issue in its prior Order.

Plaintiff's knowledge or consent. (SAC ¶¶ 94–95.) However, as Defendant points out, Plaintiff fails to identify "even one single occurrence of [the "Video on Demand" and/or "Start Over"] that involves an infringement of Vander's rights." (Reply at 6:18–19.) In the absence of any specific facts to support this allegation, Plaintiff has failed to sufficiently plead this claim in order to survive a motion to dismiss.

3. <u>Contributory and Vicarious Liability for Reproduction Infringement</u>

In the SAC, Plaintiff alleges a third cause of action for contributory infringement of Plaintiff's reproduction rights based on the synchronization allegedly conducted by T.V. Azteca in Mexico. However, because the alleged infringing act took place in Mexico, where the Copyright Act does not reach, there is no actionable direct infringement of Plaintiff's copyright. Thus, Defendant can not be held liable as a contributory infringer. *See Subafilms*, 24 F. 3d at 102 (explaining that there can be no liability for contributory infringement if there is no direct infringement).

For the same reason, Plaintiff fails to state a claim for vicarious liability for infringement of Plaintiff's reproduction right. In the second claim for relief, Plaintiff alleges that Defendant "had the right and ability to control the production activities, including the infringing activity, of TV Azteca and had the ability to prevent this infringement." (Id. ¶ 102.) However, "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F. 3d 1004, 1013 n.2 (9th Cir. 2001). Because the alleged reproduction infringements occurred outside of the purview of the Copyright Act, Plaintiff also fails to state a claim for relief for vicarious liability for reproduction infringement.

For these reasons, the Court finds that the SAC has failed to sufficiently allege a claim for primary or secondary liability for the unauthorized reproduction

of a copyrighted work against the Defendant.  The Motion is **GRANTED** as to the First, Second, and Third Causes of Action.

**B.  Unauthorized Performance Claims**

Plaintiff's fourth, fifth, sixth, and seventh copyright infringement causes of action arise out of 17 U.S.C. § 106(4), which provides the owner of a musical work copyright under this title, the exclusive right to "perform the copyrighted work publicly."

1.  <u>Direct Liability for Performance Infringement Through Transmission</u>

In the Fifth claim for relief, Plaintiff alleges that Defendant directly infringed Plaintiff's performance rights by "transmitting and broadcasting such programs [embodying the Compositions] to local television stations and satellite television and cable television networks throughout the United States without [Plaintiff's] knowledge or consent." (SAC ¶ 123.)   Defendant argues that Plaintiff failed to allege a "direct infringer" of Plaintiff's performance rights because "the broadcaster is ultimately the entity that performs the work thought (sic) the broadcast, they are the only entity that could be a direct infringer." (Motion at 11:1–3.)   In the Opposition, Plaintiff counters that Defendant infringed Plaintiff's performance rights by "[c]ausing the transmission of programs to [Defendant's] affiliates and licensees in the United States without a performance license from [Plaintiff] or its agent."  (Opp'n at 4:11–16.)  In the absence of Ninth Circuit authority on point, Plaintiff cites to a Second Circuit case which notes that "a number of courts have held that 'transmissions by a cable network or service to local cable companies who in turn transmit to individual cable subscribers constitute 'public performances' by the network under [the Copyright Act].'" *Agee v. Paramount Communs.*, 59 F. 3d 317, 325 (2nd Cir. 1995). "Treating such satellite transmissions as public performances protects music publishers and owners of copyrights in musical compositions, who have

8

exclusive performance rights under the Copyright Act; otherwise, producers and networks could avoid liability by relying on local stations to perform a copyrighted work." *Id.*[3]

Here, the SAC has sufficiently pled Defendant's liability as to the Fifth Cause of Action by alleging that Defendant broadcasted the television programs embodying the Compositions to local television stations and networks. (SAC ¶¶ 89, 90, 123, 124.) Because direct infringement of the Copyright Act does not require willful intent, it is enough that the SAC lists the television programs, embodying Plaintiff's Compositions, that Defendant allegedly transmitted to KAZA. *See Conus*, 969 F. Supp. at 584 ("Direct infringement does not require intent or any particular state of mind . . . . 'in actions for statutory copyright infringement, the innocent intent of the defendant will not constitute a defense to a finding of liability.'") (citations omitted).   Therefore, the Motion as to the Fifth Cause of Action is DENIED.

### 2.  Contributory Liability for Performance Infringement

Plaintiff's Sixth Cause of Action is based upon a theory of contributory infringement. "Although the Copyright Act does not expressly impose liability on anyone other than direct infringers, courts have recognized that in certain

---

[3] Defendant's citation to *David v. Showtime/Movie Channel, Inc.*, 697 F. Supp. 752 (S.D.N.Y. 1988) supports Plaintiff's position. The court in that case held that a cable television network's transmission of the works in the case constituted "public performances" within the meaning of the Copyright Act. *Id.* at 759 (explaining that "it seems apparent from the scope of the examples provided in the legislative history that Congress intended the definitions of "public" and "performance" to encompass each step in the process by which a protected work wends its way to its audience." The court continued, "[m]oreover, it would strain logic to conclude that Congress would have intended the degree of copyright protection to turn on the mere method by which television signals are transmitted to the public.")

1  circumstances, vicarious or contributory liability will be imposed." *Adobe Sys. v.*
2  *Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1048 (C.D. Cal. 2001) (*citing*
3  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F. 3d 259, 261 (9th Cir. 1996)). *Miller*
4  *v. Facebook, Inc.*, provides the Ninth Circuit's test for contributory infringement:

> One infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 162 L.Ed. 2d 781 (2005). The Ninth Circuit interpreted this test to mean that "one contributorily infringes when he (1) has knowledge of the author's infringement and (2) either (a) materially contributes to or (b) induces that infringement. *Perfect 10, Inc., v. Visa Int'l Service, Ass'n*, 494 F. 3d 788, 795 (9th Cir. 2007).

No. C 10-00264, 2010 U.S. Dist. LEXIS 61715, at *18 (N.D. Cal. May 28, 2010).

Plaintiff's SAC fails to allege facts sufficient to make out a claim for contributory infringement of Plaintiff's performance right. Plaintiff complains that Defendant "authorized and caused the broadcast and public performance of television programs embodying the Compositions via satellite television and cable television . . . without [Plaintiff's] prior knowledge or consent." (SAC ¶ 130.) Plaintiff's SAC lists nearly 80 instances between 2002 and 2009 when television programs embodying Plaintiff's Compositions were broadcast by "[Defendant]'s affiliate KAZA." (SAC ¶¶ 10–88.) Plaintiff further alleges that KAZA, the only television station identified by the SAC to have broadcast Plaintiff's Compositions, "is wholly owned by [Defendant]." (SAC ¶ 9.)

Here, despite Plaintiff's bald assertions that Defendant "knew or had reason to know that the broadcast and public performance of television programs embodying the Compositions via satellite and cable television was without [Plaintiff's] prior knowledge or consent," and also "induced, caused or materially contributed to the infringing activity of its cable and satellite television network licensees," Plaintiff alleges no facts to support a claim for contributory

1  infringement. (SAC ¶¶ 131,132.)  Plaintiff has pled little more than the elements
2  of the claim.  Plaintiff does not allege any facts to show that Defendant knew the
3  television programs transmitted to KAZA or other television stations embodied
4  Plaintiff's Compositions.  The reproductions allegedly took place in Mexico by
5  Defendant's parent company, T.V. Azteca, and the SAC does not allege how or
6  why Defendant would know about the reproduction infringements.  Nor does the
7  SAC allege how Defendant intentionally induced or encouraged KAZA or other
8  television stations to infringe Plaintiff's performance rights.  Courts need not
9  accept as true "[t]hreadbare recitals of the elements of a cause of action,
10 supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.  Plaintiff
11 has failed to adequately plead a claim for contributory infringement of Plaintiff's
12 performance rights.  Therefore, the Sixth Cause of Action is hereby DISMISSED.

14 Although pleaded as a claim for direct infringement, Plaintiff also pleads
15 contributory infringement in the Fourth Cause of Action.  Plaintiff complains that
16 Defendant infringed Plaintiff's performance rights when it "caused and
17 authorized the broadcast and public performance of television programs
18 embodying the Compositions in the United States . . . via satellite television and
19 cable television without [Plaintiff's] prior knowledge or consent." (SAC ¶ 117.)
20 The Copyright Act grants a copyright owner "the exclusive rights to do and to
21 authorize" any of the activities listed in 17 U.S.C. § 106(1)-(5).  However, the
22 Ninth Circuit has noted that "the addition of the words "to authorize" in the
23 Copyright Act was not meant to create a new form of liability for "authorization"
24 that was divorced completely from the legal consequences of authorized conduct,
25 but was intended to invoke the preexisting doctrine of contributory
26 infringement." *Subafilms*, 24 F. 3d at 1092 (*citing Lewis Galoob*, 964 F. 2d 965,
27 970 (9th Cir. 1992)).  "Although infringement by authorization is a form of direct

infringement, this does not change the proper focus of our inquiry; a party cannot authorize another party to infringe a copyright unless the authorized conduct would itself be unlawful." *Galoob*, 964 F. 2d at 970.

The SAC alleges little factual support to bolster the claim for "authorization" of public performance infringement. In the Opposition, Plaintiff asserts that "[i]n [Defendant's] agreements with various cable television and satellite television networks, [Defendant] took responsibility for obtaining licenses authorizing the performance of musical compositions by these licenses to the public." (Opp'n at 4:17–22.) However, Plaintiff fails to specify which cable and satellite television networks for which Defendant agreed to provide licenses. In the SAC, Plaintiff names only one television station–KAZA–as the broadcaster of the television programming embodying the Compositions. Although Plaintiff alleges that KAZA is owned by Defendant, Defendant judicially noticed an FCC record showing that Pappas Telecasting is listed as the licensee of record for KAZA. (Motion at 5:19–20; RJN at 1.) Because the claim for unlawful "authorization" of public performance is dependent upon showing that the "authorized" conduct was itself unlawful, (which Plaintiff here fails to demonstrate), Plaintiff's Fourth Cause of Action fails to state a claim for relief.

3. <u>Vicarious Liability for Public Performance Infringement</u>

Plaintiff's Seventh Cause of Action is based on the theory of vicarious liability. Specifically, Plaintiff alleges that Defendant vicariously infringed Plaintiff's performance rights when "TV Azteca caused the broadcast and public performance of television programs embodying the Compositions and by transmitting and broadcasting such programs to local television networks . . . without [Plaintiff's] prior knowledge or consent." (SAC ¶ 138.) Plaintiff further alleges that Defendant "ha[d] the right and ability to control the broadcasting activities of . . . TV Azteca." (SAC ¶ 139.) The Ninth Circuit has stated that

1
2
3
4
5
6

"[v]icarious copyright liability is an 'outgrowth' of respondeat superior." *A & M Records v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th Cir. 2001) (citations omitted). "In the context of copyright law, vicarious liability extends beyond an employer/employee relationship to cases in which a defendant 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *Id.* (citations omitted).

7
8
9
10
11
12
13
14

The Court in *Napster*, when addressing Napster Inc.'s ability to control the exchange of copyrighted songs in its network, stated that, "[t]o escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent. Turning a blind eye to detectable acts of infringement for the sake of profit gives rise to liability." *Napster*, 239 F.3d at 1023-24 (citations omitted). In ruling that Napster likely infringed the plaintiff's copyright, the court found that Napster "had the ability to locate infringing material listed on its search indices, and the right to terminate users' access to the system."

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, unlike in *Napster*, Plaintiff has failed to allege facts to show that Defendant had the "right and ability to supervise the infringing activity." In the SAC, Plaintiff does not proffer any facts to suggest that Defendant had the ability to police the content or transmission of TV Azteca's television programming for infringing activity. Likewise, Plaintiff has failed to allege that Defendant overlooked detectable acts of infringement on the part of T.V. Azteca for the sake of profit. Furthermore, because TV Azteca is Defendant's parent company in Mexico, and therefore, presumably in control of Defendant, the claim that Defendant had the "right and ability to supervise the infringing activity" of the parent company requires more factual allegations to state a claim for vicarious liability. For these reasons, Plaintiff fails to allege any facts to support this claim. *See Iqbal*, 129 S. Ct. at 1949 (explaining courts need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements."*)*

To support a claim for vicarious liability, the Plaintiff must also allege that Defendant received a direct financial benefit from the alleged infringing activity. Here, Plaintiff has not alleged any facts to show that the availability of the infringing material (here, musical Compositions included in television programming) acted as "a 'draw' for customers." *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996). In the SAC, Plaintiff merely alleges that Defendant profited through the alleged infringements on the part of TV Azteca by "avoiding the legal obligation to pay necessary licensing fees . . . and receiving revenues from advertising on the television stations broadcasting the infringing television programs." (SAC ¶ 103, 140.) These allegations fail to sufficiently plead a claim for vicarious liability. Therefore, the Seventh Cause of Action is hereby DISMISSED.

**D. Statute of Limitation**s

Defendant also argues that a "significant portion of the claimed infringing events predate the applicable statute of limitations." (Motion at 12:13–14.) Under the Copyright Act, "An action must be 'commenced within three years after the claim accrued.' 17 U.S.C. § 507(b)." *Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998). "A claim accrues when an act of infringement occurs, not when consequent damage is suffered." *Id.* Additionally, "[a] plaintiff's right to damages is limited to those suffered during the statutory period for bringing claims, regardless of where they may have been occurred." *Id.*; *See also Newton v. Diamond*, 204 F. Supp. 2d 1244, 1260 (C.D. Cal. 2002). Therefore, all claims beyond three years of the filing of this case are time-barred. Specifically, because this case was filed on December 11, 2008, all claims that arose before December 11, 2005 are DISMISSED with prejudice.

14

## IV.

## CONCLUSION

For these reasons, the Court GRANTS in part and DENIES in part Defendant's Motion (Docket no. 73). Plaintiff's First, Second, Third, Fourth, Sixth, and Seventh causes of action are hereby DISMISSED with prejudice.[4] Defendant's Motion is DENIED as to the Fifth cause of action. On January 6, 2011, the parties filed a stipulation for the continuance of the pre-trial conference and trial. The Court resets those dates as follows:

**Trial Date: April 12, 2011 at 8:30 a.m.**

**Final Pre-trial Conference: March 14, 2011 at 10:30 a.m.**

All other dates remain the same as previously set. The parties are reminded that a mandatory settlement conference must be completed prior to the Final Pre-trial Conference.

IT IS SO ORDERED.

Dated: January 21, 2011

Honorable Jacqueline H. Nguyen
UNITED STATES DISTRICT COURT

---

[4] Recognizing that Plaintiff has had two opportunities to file amended complaints and still fails to state a claim for relief on the causes of action dismissed by this Order, the Court finds that the SAC could not be saved by amendment. *Livid Holdings Ltd. V. Salomon Smith Barney, Inc.*, 416 F. 3d 940, 946 (9th Cir. 2005) (finding denial of leave to amend improper unless no amendment could save the complaint); *Miller v. Yokohama Tire Corp.*, 358 F. 3d 616, 622 (9th Cir. 2004) (explaining that the court's discretion to deny leave to amend is decidedly broader where the plaintiff has previously filed an amended complaint).